420 So.2d 574 (1982)
Allen Leroy ANDERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 52771.
Supreme Court of Florida.
September 2, 1982.
Rehearing Denied November 2, 1982.
*575 Richard L. Jorandby, Public Defender and Margaret Good and Ellen S. Morris, Asst. Public Defenders, Fifteenth Judicial Circuit, West Palm Beach, for appellant.
Jim Smith, Atty. Gen. and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Anderson appeals his adjudication of guilty of first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and vacate both the adjudication and sentence with directions that Anderson be allowed to plead anew.
In June 1976 Anderson stole the car and wallet of an employee of a treatment center in Washington State where Anderson had been staying. He then embarked on a coast-to-coast spree of robbery and murder which resulted in his pleading guilty to homicide charges in Minnesota and California, his pleading nolo contendere to a similar charge in Florida, his indictment for a murder in Virginia, and his suspected involvement in homicides in several other states.
After his arrest in California in October 1976, the Brevard County Sheriff's Office learned that Anderson might be connected with the robbery-murder of a fruit stand operator in Brevard County. A Brevard County deputy interviewed Anderson in California in January 1977 and the next month, with another deputy, attended a press conference in Minnesota which Anderson called after pleading guilty to a murder charge in that state. Before leaving Minnesota, the two deputies met with Anderson and his attorney and taped their discussion regarding the possibility of Anderson's pleading guilty to the Brevard County homicide if the state agreed not to seek the death penalty.
The deputies returned to Florida, and one of them testified before a grand jury which indicted Anderson for one count of first-degree felony murder. The two deputies returned to Minnesota in May 1977 in order to bring Anderson to Florida to stand trial. One of the deputies installed a tape recorder in their car specifically to record all conversations during the return trip, but, during the four-day auto ride, the recorder malfunctioned. Both deputies testified, however, that, commencing about the third day, Anderson talked freely and frequently of his criminal activities, including the Florida murder.
The state presented this testimony in a hearing on Anderson's motions to suppress both his February and May statements and to dismiss the indictment. The trial court found the statements to be admissible and also refused to dismiss the indictment. On the following day, instead of going to trial, Anderson changed his plea to nolo contendere conditioned on the right to appeal the denial of his pretrial motions. The court accepted the plea and proceeded with the sentencing hearing with the jury which had already been selected for the trial. After hearing both sides' evidence, the jury recommended the death penalty, with which the court concurred.
On appeal Anderson claims that the trial court erred in failing to suppress the statements he made in Minnesota and during the four-day ride to Florida. The state contends that Anderson should not be allowed to contest the trial court's refusal to suppress those statements because, as a matter of law, a confession may not be considered dispositive of a case for purposes of a plea of nolo contendere. Brown v. State, 376 So.2d 382 (Fla. 1979). We do not, *576 and cannot, apply Brown to death cases.[1] Section 921.141(4), Florida Statutes (1981), provides for an automatic review of a judgment of conviction and sentence of death. Additionally, Florida Rule of Appellate Procedure 9.140(f) provides that "[i]n capital cases, the Court shall review the evidence to determine if the interest of justice requires a new trial." Anderson's decision to plead nolo contendere may well have been prompted by the court's failure to suppress his statements. Certainly, if the predicate for the judgment of conviction is substantially impaired by the inclusion of an inadmissible statement, it is proper and necessary for this Court, in a death case, to review the record and determine whether that statement was in fact inadmissible.
Turning to the merits of the suppression issue, Anderson contends that the deputies violated his sixth amendment right to counsel during the trip in obtaining his statement. We agree. After adversary proceedings have begun, an accused is entitled to the assistance of counsel. Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), Fla.R.Crim.P. 3.111, 3.160(e). See art. I, § 16, Fla. Const. The sixth amendment applies to critical stages of criminal proceedings, and an "accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." United States v. Wade, 388 U.S. 218, 226, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967) (footnote omitted).
In the instant case Anderson had been indicted prior to the trip from Minnesota to Florida. Adversary proceedings against him, therefore, had already commenced. Moreover, the deputies knew that, during the trip, he had no counsel. Anderson's Minnesota attorney ceased representing him when Anderson began serving his sentence in that state, and Anderson told the deputies that he expected to receive appointed counsel in Florida. The deputies' acts deprived Anderson of his right to counsel.
Florida Rule of Criminal Procedure 3.130(b) provides that every arrested person shall be taken before a judicial officer within twenty-four hours of his arrest. Anderson's four-day car ride obviously prevented that, and it is significant that the elicited statements came far after the time he normally would have appeared before a judicial officer with the attendant advice of rights and appointment of counsel. The state argues that Anderson waived his right to counsel and spoke freely during the trip. The record, however, shows no intentional relinquishment or abandonment of a known right or privilege.
We also agree that Anderson made the February statement during plea negotiations, which renders that statement inadmissible. Both Florida Rule of Criminal Procedure 3.172(h), currently in effect, and former rule 3.171(d), in effect when Anderson entered his plea, forbid admitting into evidence statements made during plea negotiations. The state argues that the discussion during which Anderson offered to plead guilty if the state would forego seeking the death penalty did not constitute plea bargaining because the deputies did not have the authority to negotiate a plea.[2] Testimony at the suppression hearing, however, established that both Anderson and his attorney believed that they were bargaining for a plea and that the senior deputy had spoken with the state attorney by telephone regarding talking with Anderson. In his testimony at the hearing, the other deputy referred to the February discussion as "plea negotiations." On the totality of the circumstances the deputies' disavowal *577 to Anderson and his Minnesota attorney that they could finalize a plea bargain on the spot does not remove the February statement from the process of plea negotiations.
The facts of this case demonstrate that Anderson actively sought to negotiate a plea agreement and did not merely make an admission. The February statement, thus, fits within the two-tiered analysis for determining whether a discussion should be characterized as a plea negotiation, as set out in United States v. Robertson, 582 F.2d 1356 (5th Cir.1978):
[F]irst, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the circumstances.
Id. at 1366. The cases relied on by the state[3] involved unilateral offers by the individual defendants and are factually distinguishable from the instant case. We find that Anderson's February statement meets the Robertson test and that the trial court erred in not suppressing that statement.
We hold that the state obtained Anderson's May statements in violation of his sixth amendment right to counsel and that the February plea-negotiations statement is also inadmissible. The trial court erred in not suppressing these statements, and Anderson should be allowed to change his plea.[4] We vacate the adjudication and sentence and direct the trial court to allow Anderson to plead anew in a new trial.
It is so ordered.
ALDERMAN, C.J., and OVERTON and SUNDBERG, JJ., concur.
McDONALD, J., concurs with an opinion.
BOYD, J., dissents with an opinion, with which ADKINS, J., concurs.
McDONALD, Justice, concurring.
I concur in the majority opinion. In addition I find that admitting the car ride statements into evidence violates article I, section 9 of the Florida Constitution which proscribes compelling a person to be a witness against himself.[*] An involuntary statement is equivalent to a compelled statement, and a confession must be voluntary to be admissible. The trial judge found the May statements to have been given voluntarily and I do not doubt nor dispute that the final words spoken give it that appearance. Forgotten, however is the patent psychological persuasion that emanated from the prolonged contact of the defendant with his captors as they moved along the highways in a travelling cell for four days, interrupted only by late stops at night and Anderson's delivery to a jail for a night's housing. The deputies had assured Anderson that they would not hurt him, and they guaranteed and promised that he would be returned to Minnesota. His early resistance to talking about the crime failed and, toward the end of the trip, died into submission to talk. The deputies were prepared by having a tape recorder; all was planned. It is too much to accept that under these circumstances the confession was anything but compelled. For this additional legal ground the confession should be suppressed.
BOYD, Justice, dissenting.
I dissent from the Court's holding that appellant's voluntary and spontaneous admissions of his guilt of the crime were inadmissible simply because he made the statements during a four-day automobile *578 trip in the company of two sheriff's deputies.
Appellant had conferred with counsel in Minnesota prior to his decision to return to Florida to face the charge of murder. At the start of the journey, the officers gave appellant the Miranda warning. That is, they advised appellant of his right to remain silent and to have an attorney present during questioning. Furthermore, they warned him that anything he might say would be used as evidence against him. Appellant waived, at least temporarily, the immediate right to consult with counsel about his case, when he decided to return and embarked upon the trip back to Florida. He later waived his right to remain silent when he told the deputies about his crime. Neither his fifth nor his sixth amendment rights were violated.
The fact that the officers attempted to record appellant's statements on tape does not suggest, as the majority opinion implies, that they planned to interrogate him during the trip in violation of his right to have counsel present during questioning. The deputies knew from their experience that criminals sometimes spontaneously confess, and that a tape recording would add corroboration to the deputies' testimony should the accused later deny his confession.
Before accepting appellant's plea of nolo contendere, the trial court required of the state a minimal showing of the evidentiary basis for entering an adjudication of guilt upon the plea. The showing consisted of the statements appellant made during the trip from Minnesota to Florida in May, 1977, and a gasoline credit card receipt, bearing appellant's fingerprint, showing that appellant was in Brevard County on the day of the murder. However, there were also other inculpatory statements of the appellant, sufficient to establish guilt, which the court had ruled admissible but which were not presented as part of the factual basis for acceptance of the plea. Because the record shows that there was other evidence, in addition to that found inadmissible by the majority, showing appellant's guilt, the ruling on the May, 1977, statements was not "dispositive" of the case. Therefore, the majority's holding that the May, 1977, statements were inadmissible is not a sufficient basis to reverse the adjudication of guilt entered upon appellant's nolo plea. See Brown v. State, 376 So.2d 382 (Fla. 1979); First Amendment Foundation, Inc. v. State, 364 So.2d 450 (Fla. 1978); Tiller v. State, 330 So.2d 792 (Fla. 1st DCA 1976).
Furthermore, I find that appellant's other points on appeal are equally without merit and that the sentence of death was imposed in accordance with the law.
ADKINS, J., concurs.
NOTES
[1] Due to this holding, we do not address Anderson's contention that Brown is so drastic a change in the law as to mandate reversal and the opportunity to plead anew in all types of criminal cases.
[2] The state contends that only the prosecuting attorney can negotiate a plea. See 33 Fla. Stat. Ann. rule 3.171, comment, 246 (1975).
[3] Stell v. State, 366 So.2d 825 (Fla. 4th DCA 1979); Blake v. State, 332 So.2d 676 (Fla. 4th DCA 1976); Wright v. State, 309 So.2d 215 (Fla. 3d DCA), cert. denied, 323 So.2d 273 (Fla. 1975).
[4] Notwithstanding our holding of inadmissibility of the February and May statements, we disagree with Anderson's contention that an insufficient basis for issuance of the indictment exists. See Richardson v. State, 100 Fla. 835, 130 So. 718 (1930).
[*] Substantially the same as the fifth amendment to the United States Constitution.