596 So.2d 740 (1992)
Miguel Angel SEGARRA, Appellant,
v.
STATE of Florida, Appellee.
No. 88-03503.
District Court of Appeal of Florida, Second District.
March 27, 1992.
*741 Patricia A. Paterson of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Wendy Buffington, Asst. Atty. Gen., Tampa, for appellee.
FRANK, Acting Chief Judge.
Miguel Angel Segarra appeals from convictions for first degree murder  the killing of Rita Waldron  and the first degree attempted murder of Robert Berta. He challenges the trial court's failure to suppress his confession and its admission at trial. We affirm.
On the night of February 19, 1988, Segarra and his friend, Shawn Strange, left Segarra's house to rob a nearby convenience store. After staking out the store for nearly half an hour, Segarra entered the building while Strange remained inside the vehicle. Segarra first approached Berta who was playing video games, revealed a gun, and ordered him to the back of the store. When Berta refused and lunged for the weapon, Segarra shot him in his upper leg. Berta fell and Segarra shot him in the face. Fearing that the cashier had witnessed the shooting, Segarra approached the front counter, chased the cashier, Waldron, ordered her onto the floor and fired into the back of her head, killing her instantly.
Authorities in Pinellas County arrested Segarra for crimes unrelated to those involved in this appeal on March 11, 1988, after recognizing his vehicle as one that had been seen at several armed robberies in Pinellas County. Segarra was transported to a sheriff's substation in Hillsborough County where he received his rights before being questioned by Hillsborough County Sheriff's Detective Albert Frost and Pinellas County Sheriff's Detective Bonnie Richway. Segarra executed a consent to interview form, and voluntarily confessed to committing several armed robberies within Pinellas and Hillsborough Counties. The statements taken during this interrogation, however, are not the subject of our review.
A second interview of Segarra occurred on March 18, 1988, at the Hillsborough County Jail. Detective Kathleen Nover of the Pinellas Park Police Department  accompanied by Detective Leo Paile of the Tampa Police Department  informed Segarra that she was investigating the recent robbery of a Taco Bell in Pinellas County. In response, Segarra stated, "yea, I know that one and I don't want to talk until my lawyer is present."[1] Turning immediately then to Detective Paile, Segarra began reminiscing about their earlier days together playing baseball in West Tampa. Paile eventually led the conversation into a discussion of former, "closed" cases with which he and Segarra were familiar. Paile testified that he "asked him if he was aware of anybody else who had been involved in any other robberies like in the north end of town similar to what he *742 had been involved in, not he himself directly, but if he had any knowledge of anybody else and he said no, he didn't." As the detectives prepared to leave, Segarra seemed willing to talk. He volunteered information regarding the robbery of the Taco Bell that Detective Nover was investigating.
The third and final interview, conducted by Detective Albert Frost of the Hillsborough County Sheriff's Office, occurred five days later on March 23, 1988. Segarra had yet to confer with counsel. The Miranda warning was repeated and Segarra was shown the waiver form he had previously signed on March 11. At that juncture he confessed his participation in the armed robbery of the Tampa convenience store, the murder of Waldron and the attempted murder of Berta.
At the conclusion of Segarra's trial the jury returned a verdict of guilty on one count of first degree murder and one count of first degree attempted murder. A separate jury convicted Segarra of armed robbery with a firearm. Segarra entered pleas of guilty in three additional cases, two of which involved charges of armed robbery, the other involving charges of armed robbery and felonious possession of a firearm. Each of the five cases arose from separate incidents occurring at different times. Segarra received a life sentence with a twenty-five year mandatory minimum for the first degree murder conviction (Waldron), and a thirty year sentence with a mandatory minimum of three years for the first degree attempted murder conviction (Berta), the mandatory terms to be served consecutively. In each of the other four cases, Segarra received life sentences with consecutive three year mandatory minimum terms.
Segarra's present contention focuses on the admission in his murder trial of the March 23 confession given to Frost after his March 18 invocation of the right to remain silent. He correctly asserts that once he refused on March 18 to speak pending consultation with counsel, Paile should not have questioned him nor discussed the matter further. Minnick v. Mississippi, ___ U.S. ___, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). Indeed, after the right to counsel has been asserted, an officer must avoid "any words or actions ... reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980). Custodial questioning without the presence of counsel may continue only if "the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). From this state of the record, it is manifest that the trial court erred by admitting the March 23 confession procured by Frost. When Segarra asserted his right to remain silent on March 18, the presumption arose that he considered himself unable to deal with the pressures of custodial interrogation without legal assistance.[2]See Arizona v. Roberson, 486 U.S. 675, 684, 108 S.Ct. 2093, 2098, 100 L.Ed.2d 704 (1988). The custodial questioning by Paile pertaining to past crimes similar to the crimes for which Segarra was being held might reasonably have encouraged him to cooperate. Moreover, consistent with Minnick, we reject the state's contention that Segarra's assertion of his Fifth Amendment right on March 18 did not extend to the third or March 23 interview conducted by Frost. Although Frost renewed the Miranda warning at the March 23 examination, a "fresh set" of warnings several days later *743 will not necessarily reassure the accused that his rights remain "untrammeled." Roberson, 486 U.S. at 686, 108 S.Ct. at 2100. Because the interrogative episodes associated with Segarra's detention involved the presence of authorities from different police jurisdictions, a potentially recurring circumstance, it is imperative that we emphasize and endorse the caveat expressed in Roberson, applicable as well to police officers within the same jurisdiction, that:
[C]ustodial interrogation must be conducted pursuant to established procedures, and those procedures in turn must enable an officer who proposes to initiate an interrogation to determine whether the suspect has previously requested counsel. In this case respondent's request had been properly memorialized in a written report but the officer who conducted the interrogation simply failed to examine that report. Whether a contemplated reinterrogation concerns the same or a different offense, or whether the same or different law enforcement authorities are involved in the second investigation, the same need to determine whether the suspect has requested counsel exists.
486 U.S. at 687-88, 108 S.Ct. at 2101.
In any event, although the challenged statements should have been excluded, our review leaves us without a reasonable doubt that the trial court's error did not affect the jury in reaching its verdict. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986); see also, Traylor. Although we appreciate the "indelible impact a full confession may have" on the minds of the jurors, nothing before us overcomes the judgment we have formed that the state has met its burden of establishing beyond a reasonable doubt that the admission of Segarra's confession to Detective Frost was harmless error. See, Arizona v. Fulminante, ___ U.S. ___, 111 S.Ct. 1246, 1266, 113 L.Ed.2d 302 (1991) (Kennedy, J., concurring) (admission of coerced confession subject to harmless error analysis). Segarra's custodial admissions did not form the hub of the prosecution's case. Cf. United States v. Gomez, 927 F.2d 1530 (11th Cir.1991) (defendant's coerced statement fundamental to government's case). The state relied upon the testimony of Berta, the first shooting victim, and it heard Stephanie Baker, Segarra's girlfriend, recount his conduct before and after the shooting spree. The evidence of Segarra's guilt was qualitatively convincing.
Baker testified that Segarra and Shawn Strange left Segarra's house on February 19, 1988, to shop at a neighborhood convenience store. When they returned forty minutes later Segarra and Strange went immediately to Segarra's bedroom where Baker ultimately found Segarra lying on his bed staring at the ceiling. She saw a handgun in his hand and repeatedly asked what was wrong, to which Segarra shouted, "I just fucking killed two people. Okay." Baker observed Segarra removing shell casings from the gun and placing them on a dresser next to the bed. While watching the news later that night, Baker recognized the convenience store in the report as one approximately a mile and a half from the house. She testified that Segarra eventually disclosed the full story to her. Baker admitted not taking her knowledge to the police immediately, saying she feared Segarra.
Berta testified that on the night he was shot he was inside the convenience store playing video games. Segarra approached him and demanded money. He remembered twice being shot, lying on the floor and hearing Segarra walk over to the counter. He remembered hearing Waldron scream, hearing her running and being chased and hearing the gun being fired. At this point, Segarra stepped over him and exited the store. Berta was able to identify Segarra at trial as the perpetrator of the shootings.
In sum, the uncontroverted evidence that Segarra committed the crimes with which he was charged leaves no room to question the correctness of the jury's verdict. We have examined the record and find no reasonable possibility that Segarra's confession controlled the result reached by the jury. See Alvord v. Dugger, 541 So.2d 598 (Fla. 1989), cert. denied, 494 U.S. 1090, 110 *744 S.Ct. 1834, 108 L.Ed.2d 963 (1990). The convictions are affirmed.
Segarra has also attacked the sentences imposed by the trial court. Relying upon Palmer v. State, 438 So.2d 1 (Fla. 1983), he urges us to conclude that the consecutive mandatory minimum terms stemming from the first degree murder and attempted first degree murder were improper because the offenses arose from a single criminal episode. We reject this notion. Our supreme court has approved consecutive three-year mandatory minimum sentences for the possession of a firearm during the commission of felonies separated in time or place. See, e.g., State v. Thomas, 487 So.2d 1043 (Fla. 1986) (consecutive mandatory terms appropriate where defendant shot victim four times in her home, followed her outside, paused to fire at the victim's son, and then shot the woman twice more). The Thomas court determined that the attempted murder of one victim and the aggravated assault of another constituted "two separate and distinct offenses involving two separate and distinct victims" for which consecutive mandatory terms were appropriate. 487 So.2d at 1044. Segarra sought to rob Berta before shooting him twice. He then killed Waldron  a capital felony. Thus, Segarra committed a separate and distinct statutory offense against each victim but the mandatory minimum portion of the life sentence imposed for the killing of Waldron was not an enhanced penalty. See § 775.082(1), Fla. Stat. (1987). Hence, the imposition of consecutive sentences was not violative of the principle announced recently in Daniels v. State, 595 So.2d 952 (Fla. 1992), i.e., the stacking of mandatory minimum sentences stemming from two or more felony enhancement statutes is prohibited.
Accordingly, we affirm Segarra's convictions and sentences.
PARKER and ALTENBERND, JJ., concur.
NOTES
[1] The state contends that by this statement Segarra asserted his right to counsel as guaranteed by Article I, Section 16, of the Florida Constitution and the Sixth Amendment to the Constitution of the United States. We disagree with that view of his words. Neither Article I, Section 16, nor the Sixth Amendment are implicated by Segarra's refusal to talk until his lawyer was present. The right to counsel, as contemplated by Article I, Section 16 and the Sixth Amendment, attaches once a suspect is charged with a crime and requests a lawyer. By contrast, the right to assistance of counsel, as contemplated by Article I, Section 9, and the Fifth Amendment arises, whether or not a suspect has been charged with a crime, at the moment when the suspect indicates during custodial interrogation that he wishes to consult with an attorney before further questioning. Traylor v. State, 596 So.2d 957, 968 (Fla. 1992). Because Segarra announced his right to remain silent pending consultation with his attorney, we conclude he was seeking the protection guaranteed by Article I, Section 9, and the Fifth Amendment.
[2] Our supreme court set forth the procedural safeguards the state must follow when, during a custodial interrogation, the assistance of counsel is requested:

[I]f the suspect indicates in any manner that he or she does not want to be interrogated, interrogation must not begin or, if it has already begun, must immediately stop. If the suspect indicates in any manner that he or she wants the help of a lawyer, interrogation must not begin until a lawyer has been appointed and is present or, if it has already begun, must immediately stop until a lawyer is present. Once a suspect has requested the help of a lawyer, no state agent can reinitiate interrogation on any offense throughout the period of custody until the lawyer is present.
Traylor, 17 F.L.W. S42, S45, ___ So.2d ___, ___.