798 So.2d 50 (2001)
Lawrence MOORE, Appellant,
v.
STATE of Florida, Appellee.
No. 1D00-1073.
District Court of Appeal of Florida, First District.
October 26, 2001.
*51 Steven M. Greenberg, P.A., Cooper City, for Appellant.
*52 Robert A. Butterworth, Attorney General and Robert R. Wheeler, Assistant Attorney General, Tallahassee, for Appellee.
VAN NORTWICK, J.
Lawrence Moore appeals his conviction for trafficking in cocaine, possession of cannabis and possession of drug paraphernalia arguing that the evidence adduced at trial against him was insufficient to support these convictions and that the trial court erred in admitting into evidence an inculpatory statement made by him after he invoked his right to silence. Because appellant's inculpatory statement was made in response to custodial interrogation subsequent to appellant invoking his right to silence, it was error to admit the statement. Finding that the error was not harmless, we reverse.
Appellant and a codefendant were arrested following the execution of a search warrant in a Gainesville, Florida hotel. No one was present in the hotel room at the time the search warrant was executed; police discovered cocaine, cannabis, and paraphernalia in the room. Also located in the room were various items of clothing as well as certain receipts bearing the name of appellant's codefendant. Appellant and his codefendant were arrested sometime thereafter while traveling in the codefendant's car.
After he was arrested, appellant was given his Miranda[1] rights and indicated to police that he did not wish to speak. After invoking this right, a police officer, Michael Witherington, approached appellant with clothing taken from the hotel room and asked appellant if any of the clothing was his. According to Witherington, the clothing was not being retained as evidence, and he wanted to return it. The fact that appellant identified some of the clothing as his was used at trial to establish that appellant occupied the room in which the drugs and paraphernalia were found.
Appellant sought to exclude this testimony as to his claimed ownership of the clothing, but the trial court denied the request. This was error.
It is well-established that once a suspect invokes his right to silence, no further police initiated custodial interrogation can take place unless the accused initiates further communication, exchanges, or conversations with the police. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); Almeida v. State, 737 So.2d 520 (Fla.1999). A request to remain silent is to be scrupulously honored. Michigan v. Mosley, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975).
There is no question here that appellant was in custody in the instant case at the time he was asked to identify his clothing. The issue before us is whether the inculpatory statement by the appellant was made as a result of interrogation.
The Supreme Court examined the concept of interrogation in the context of Miranda in Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The Innis court explained that, under Miranda, custodial interrogation occurs when a law enforcement officer initiates the questioning of an individual who "has been taken into custody or is otherwise deprived of his freedom of action in any significant way." Id., 446 U.S. at 298, 100 S.Ct. 1682. Interrogation occurs when an individual in custody is subject to express questioning or its "functional equivalent." Id. at 300-301, 100 S.Ct. 1682. The "functional equivalent" of express questioning is "any *53 word[ ] or action[ ] on the part of the police (other than those normally attendant to arrest and custody) that the police should know is reasonably likely to elicit an incriminating response from the suspect." Id. at 301, 100 S.Ct. 1682. The latter portion of the functional equivalent test focuses "primarily upon the perceptions of the suspect, rather than the intent of the police." Id. This focus on a suspect's perceptions "reflects the fact that the Miranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police." Id.
While the "focus" of the Innis test may be on the suspect's perceptions, the intent of a police officer may be relevant, particularly when a police practice is "designed to elicit an incriminating response," and the intent of police may bear on the question of whether the "police should have known that their words or actions were reasonably likely to evoke an incriminating response." Id. at 301, n. 7, 100 S.Ct. 1682. But it need not be dispositive. Additionally,
[a]ny knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion might be an important factor in determining whether the police should have known that their words or actions were reasonably likely to elicit an incriminating response from the suspect.
Id. at 302, n. 8, 100 S.Ct. 1682.
Similarly, the Florida Supreme Court has explained that "[i]nterrogation takes place ... when a person [in custody] is subjected to express questions, or other words or actions, by a state agent, that a reasonable person would conclude are designed to lead to a incriminating response." Traylor v. State, 596 So.2d 957, 966 n. 17 (Fla.1992). Thus, the standard as to whether a custodial interrogation has occurred is an objective one. See White v. State, 680 So.2d 550, 556 (Fla. 1st DCA 1996).
Here, we conclude that, under Innis, it was error to admit the inculpatory statement by appellant. Officer Witherington's inquiry about the clothing found in the hotel room did lead to an incriminating response by the appellant. Further, the officer's intention as to whether he was trying to elicit an incriminating response or whether he was interested in returning items not being retained as evidence is not dispositive. See U.S. v. Taylor, 985 F.2d 3, 7 (1st Cir.1993).
The state argues that, even if the trial court erroneously admitted appellant's statement, the error was harmless. We cannot agree. The Florida Supreme Court established the test to be applied in a harmless error analysis in State v. DiGuilio, 491 So.2d 1129 (Fla.1986). There, the Court explained that
[t]he harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.
Id. at 1135; see also Goodwin v. State, 751 So.2d 537 (Fla.1999). Under the facts of the case before us, we cannot conclude there is no reasonable possibility that the admission of appellant's inculpatory statement contributed to his conviction.
In our harmless error analysis, we find the reasoning of the court in United States v. Soto, 953 F.2d 263 (6th Cir.1992), persuasive. In Soto, a defendant and a fellow passenger had been stopped for a traffic infraction at an airport. Police concerns *54 raised during the stop prompted officers to request consent to search the car. When consent was given, officers recovered a brown plastic garbage bag which contained cocaine. The defendant, however, was not present when the garbage bag was discovered. Following his arrest, as officers were inventorying his property, the photograph of the defendant with his wife and child was disclosed. Upon seeing the photograph, a police officer said to the defendant: "What are you doing with crap like that when you have these two waiting for you at home?" When asking this, the officer gestured to the brown plastic bag, the contents of which had not been disclosed to the appellant and were not otherwise visible. The defendant answered: "That's not my coke." Id. at 264.
In Soto, the defendant unsuccessfully sought to exclude the statement from trial, but the reviewing court held that admission of the statement was error which could not be deemed harmless given the circumstantial nature of the evidence. The Soto court explained:
[w]hile [police officer] Murphy's remark was not couched in formal question and answer form, in substance it was a direct inquiry into [the defendant's] reasons for committing the offense he appeared to have committed, and it elicited an inculpatory response.... The critical issue at trial was whether [the defendant] had knowledge of the cocaine in the trunk. When his statement was sought and elicited, there had been no prior mention that the contents of the bag was [sic] cocaine. [The defendant's] reference to it as "not my coke" supplied the missing evidence of knowledge, and the government used the statement for that purpose.
Id. at 265.
Likewise, in the case on appeal, the evidence linking appellant to the room on the morning the cocaine and other contraband was found is circumstantial,[2] apart from the clothing recovered from the room. Thus, the error in admitting the fact of appellant's identification of clothing cannot be deemed harmless.
Because, under Innis, it was error to admit appellant's statement and because we cannot find the error harmless, we are constrained to reverse and remand for further proceedings. Appellant also argues that the trial court erred in denying his motion for a judgment of acquittal. We affirm the denial of such a motion. On remand, a new trial may be sought without violating the double jeopardy clause of the Fifth Amendment to the United States Constitution. See Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).
REVERSED and REMANDED.
ALLEN, C.J., and BROWNING, J., CONCUR.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The prosecution presented (i) evidence that appellant was overheard talking with his codefendant about how much money could be made by selling cocaine; (ii) testimony of a witness who was also charged in connection with the offenses for which appellant was on trial that appellant traveled to Miami, Florida, was involved in the purchase of the large amount of cocaine, and arranged for the transport of the cocaine back to Gainesville, Florida, and was involved in the sale of that cocaine; and (iii) testimony by the hotel manager that appellant was one of three persons who had paid for a night's stay (although the room was registered in a codefendant's name and two other persons paid for the room on other occasions). While the evidence does demonstrate appellant's possible connection to drug trafficking, there is no evidence directly linking appellant to the room in which the contraband was located during the time frame in which the room was searched.