929 So.2d 640 (2006)
Juan Raul CUERVO, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-3879.
District Court of Appeal of Florida, Fifth District.
May 12, 2006.
*641 James S. Purdy, Public Defender, and Leonard R. Ross, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Allison Leigh Morris, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
Juan Raul Cuervo ["Cuervo"] appeals his conviction of attempted first-degree murder with a weapon and burglary of a conveyance with an assault or battery with a weapon. He argues that the trial court erred by denying his motion to suppress his confession because it was involuntarily made without a free and intelligent waiver of his right to remain silent. We affirm.
The victim lived in her sister's house; Cuervo lived in the garage. On the evening of the attack, Cuervo hid in the victim's vehicle and emerged from the rear seat while she was driving. He held a knife to her throat and said that her day had comeand she was going to die. He continuously stabbed her until she escaped the vehicle. He then exited the vehicle and continued to stab her. She finally was able to flag down a passing vehicle, and law enforcement was called.
Law enforcement apprehended Cuervo the next day and read him his Miranda[1] rights. Deputy Garcia translated for Detective Palmieri because Cuervo could not speak English. Garcia asked Cuervo, "Do you wish to talk about the matter and make a statement, yes or no?" Cuervo responded, "No, I do not want to declare anything. I justI do not want to declare anything." Detective Palmieri noticed that the Miranda form had not been initialed or signed, and she asked Officer Garcia to review the rights again and to have Cuervo do so. The following exchange then occurred:
Officer Garcia: (Explains Miranda rights in Spanish.)
Detective Palmieri: Please explain to him that at this time if he does wish to speak with us that he can give us his side of the story. If he doesn't wish to, that's his right. He does not have to. Just let him know that.
Officer Garcia: He is saying that he doeshe does not wish to speak because he doesn't know if the victim already said anything or the victim's mother, because he's afraid that they've been here for 30 years or more and that they can use anything against him to (indiscernible).
Detective Palmieri: Okay. Does he have an attorney that we can speak with?
Officer Garcia: He doesn't know anybody in this country, and he does not have an attorney. He's by himself in this country. He doesn't have any family (inaudible).
Detective Palmieri: Okay. So at this time, he's refusing to talk to us?
Officer Garcia: He says heif you ask him aquestions, he will answer them although if he feels like he doesn't want to answer that one, then he won't answer that one.
Detective Palmieri: Tell him that's fine. He doesn't have to answer any question that I ask.
In response to the ensuing questions, Cuervo then related information largely consistent with the victim's account of the events. Cuervo said that the victim had been driving him crazy, he was lying in the rear seat of her vehicle when she left for work, a twelve-inch knife was in the car, *642 and he only intended to talk to her, but he got angry and began to stab her.
During the suppression hearing, Palmieri explained why she did not cease communicating with Cuervo:
Well, . . . there was the communication barrier. . . . Originally, I told Deputy Garcia to have himread him the rights, and to have him initial to make sure he understands. And, I guess, at that point Deputy Garcia told me he does not want to talk. But when I looked down at the paperwork, it showed that he did not sign it. So I told him please go back, have him initial it, and make sure he understands. And I said make sure he understands this is his opportunity to speak. But I just wanted to make sure that was clear, . . . I wanted to make sure he knew his rights, and I wanted it initialed.
The State's position was that Cuervo made equivocal responses. The State pointed out that in the leading Florida case, Owen v. State, 862 So.2d 687 (Fla. 2003), the statements "I don't want to talk about it," and, "I'd rather not talk about it," were deemed equivocal. The State argued that Cuervo merely made "cryptic statements" and, even if Cuervo had made an unambiguous statement, the police were only prevented from asking substantive questions.
The trial court found that Cuervo's statements were ambiguous and that the exchange that followed was only for clarification, and did not amount to a violation of Cuervo's constitutional rights. We agree that Cuervo's statements were not subject to suppression.
At the very least, the brief exchange between Palmieri and Cuervo, with Garcia translating, was sufficiently uncertain to allow clarifying questions. The entire dialogue took only about five minutes and arose in the context of a translation. Cuervo began by responding that he did not want to "declare anything." The follow-up question elicited from him an odd narrative about his family that was the opposite of "not speaking" and which compounded the ambiguity about whether he wished "to speak" or not. In response to the question about whether he had counsel the police could talk to, he responded by volunteering to answer questions put to himor notas he chose. In the entire exchange, there was manifestly no coercion of any sort, no effort to overcome a settled decision to invoke his right to remain silent, no interrogation.
Police can certainly clarify an ambiguous exchange with a suspect, although they are under no obligation to do so. See Owen, 862 So.2d at 697-698. They may also give multiple Miranda warnings, to ascertain a defendant's intent. Sotolongo v. State, 787 So.2d 915 (Fla. 3d DCA 2001). They are also permitted to continue to communicate with a defendant even after he has invoked his right to remain silent. Everett v. State, 893 So.2d 1278 (Fla.2004) (law enforcement officer's request for a consent to search from a defendant in custody who has invoked the right to counsel does not violate the Fifth Amendment). What is prohibited following the invocation of rights is custodial interrogation or its functional equivalent. See Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "[T]he definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." Id. at 302, 100 S.Ct. 1682. Also prohibited are persistent efforts to wear down a suspect's resistance and make him change his mind about invoking his rights. Michigan v. Mosley, 423 U.S. 96, 105, 96 S.Ct. 321, 46 L.Ed.2d *643 313 (1975). However, neither circumstance was present in this case.
Bright lines are valuable tools in this area of the law, but there is nothing in this brief exchange, as it is communicated back and forth in two languages for which the protection of Miranda is required. When asked point blank if he was refusing to speak, Cuervo could simply have said, "yes." He chose, instead, to hear the investigator's questions and to respondor not, as he chose.
AFFIRMED.
ORFINGER, J., concurs.
THOMPSON, J., dissents, with opinion.
THOMPSON, J., dissenting, with opinion.
I respectfully dissent. First, I acknowledge the majority has objectively and neutrally stated the facts from the record on appeal. I simply restate certain facts from the suppression hearing for emphasis before discussing my basis for dissenting.
During the suppression hearing, Officer Palmieri conceded that Cuervo twice stated he did not wish to speak to them. Palmieri explained why questioning continued:
Well, . . . there was the communication barrier. . . . Originally, I told Deputy Garcia to have himread him the rights, and to have him initial to make sure he understands. And, I guess, at that point Deputy Garcia told me he does not want to talk. But when I looked down at the paperwork, it showed that he did not sign it. So I told him please go back, have him initial it, and make sure he understands. And I said make sure he understands this is his opportunity to speak. But I just wanted to make sure that was clear, . . . I wanted to make sure he knew his rights, and I wanted it initialed.
The trial court found that Cuervo's statements were ambiguous and that Palmieri's question about not wanting to talk was only clarification; therefore, it denied Cuervo's motion. Here, I believe the trial court erred.
I presume that the trial court's findings of fact are correct, but independently review mixed questions of law and fact arising in the context of the Fifth Amendment and Article I, section 9 of the Florida Constitution. See Globe v. State, 877 So.2d 663, 668-69 (Fla.2004). The admissibility of statements obtained after Cuervo expressly decided to remain silent depends on "whether his right to cut off questioning was scrupulously honored." See Michigan v. Mosley, 423 U.S. 96, 104, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (citation and internal quotation marks omitted); Origi v. State, 912 So.2d 69 (Fla. 4th DCA 2005); Moore v. State, 798 So.2d 50, 52 (Fla. 1st DCA 2001). Here, I don't think it was.
If the suspect clearly indicates that he does not want to be questioned, questioning must stop immediately. Miranda, 384 U.S. at 473-74, 86 S.Ct. 1602; Globe, 877 So.2d at 669; Traylor v. State, 596 So.2d 957, 966 (Fla.1992); Dooley v. State, 743 So.2d 65, 68 (Fla. 4th DCA 1999). In Globe, the supreme court considered five factors derived from Mosley to determine whether, under the totality of the circumstances, the suspect's Miranda rights were violated when questioning resumed after his invocation of the right to silence:
First, Mosley was informed of his rights both times before questioning began. Second, the officer immediately ceased questioning when Mosley unequivocally said he did not want to talk about the burglaries. Third, there was a significant lapse of time between the questioning on the burglary and the *644 questioning on the homicide. Fourth, the second episode of questioning took place in a different location. Fifth, the second episode involved a different crime.
Globe, 877 So.2d at 670.
The Supreme Court's conclusion in Mosley is instructive:
This is not a case . . . where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind. In contrast to such practices, the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation.
423 U.S. at 105, 96 S.Ct. 321.
Here, Cuervo was informed of his rights. However, the officers did not cease questioning about the same crime after Cuervo indicated he did not want to talk, and they did not conduct questioning at a different location or after any time lapse. Although the officers did not need to persist in repeated efforts to make Cuervo change his mind, they did not scrupulously honor his invocation of silence.
The majority cites State v. Owen, 696 So.2d 715 (Fla.1997), and related cases for the proposition that the police need not ask clarifying questions, let alone stop interrogations, when suspects ambiguously invoke Fifth Amendment rights. Owen, 696 So.2d at 719. The majority relies on Owen to claim that Cuervo's statements were ambiguous because phrases such as "I don't want to talk about it" and "I'd rather not talk about it" are equivocal statements. I think Owen is inapposite.[2]
In contrast to Owen, Cuervo made two statements that clearly showed he did not wish to speak to the police. Invocation of the Fifth Amendment should not require "criminal suspects to speak with the discrimination of an Oxford don." Davis v. United States, 512 U.S. 452, 476, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (Souter, J., concurring). Both officers specifically testified that Cuervo stated he did not want to speak to them; that expression sufficed. See Smith v. State, 915 So.2d 692 (Fla. 3d DCA 2005) (dismissing State's contention that defendant's assertion was ambiguous). Courts have held that admitting statements after such an expression is error, even if improper questioning quickly leads a suspect to change his mind. See Dooley, 743 So.2d at 67-69.
Here, the State's argument that Palmieri's questions were clarifying rather than substantive is sleight of hand. Taken to its logical conclusion, an officer can testify that clarifying questioning continued because the defendant appeared confused or puzzled. An officer could also state that, in light of defendant's minimal education, clarification was needed to be sure the defendant understood his rights. If nothing else, Miranda stands for the proposition that police questioning must stop when the defendant invokes his rights. To reiterate, if the suspect clearly indicates that he does not want to be questioned, interrogation must cease. Globe, 877 So.2d at 669; Traylor, 596 So.2d at 966.
*645 Interrogation occurs when a suspect is subjected to express questions or other actions by a state agent that a reasonable person would conclude are designed to lead to incriminating responses. Traylor, 596 So.2d at 966 n. 17; Moore, 798 So.2d at 53. Tangential statements and non-substantive questions may constitute interrogation. Origi, 912 So.2d 69 (holding that suspect's response to the officer's statement, "[t]hat's a lot of drugs you had," was inadmissible); Moore, 798 So.2d at 52 (ruling that defendant's response, that clothes found in one hotel room were his, was inadmissible). Furthermore, Palmieri's intention as to whether she was trying to elicit an incriminating response is not dispositive. See Moore, 798 So.2d at 53. Her first clarification resulted from the fact Cuervo had not initialed the form acknowledging his rights. Cuervo had already invoked them. Her second clarification sprang from her opinion that Cuervo sounded like he was debating whether he wanted to talk. Regardless of the suspect's reason for saying nothing, it is not the officer's prerogative to examine whether the suspect really means it. Questioning must cease and may resume under conditions that satisfy Globe. Palmieri's questions could have only led to one of two results: Cuervo remained silent, or he relented and provided incriminating information. This constituted questioning that should have ceased when Cuervo unequivocally stated he did not want to make a statement, and I do not deem this error to be harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Accordingly, I would reverse and remand for further proceedings.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] As the supreme court clarified, the first question to Owen concerned whether he deliberately targeted a house, and the second question concerned the location of a bicycle. "In both statements it was unclear whether Owen was referring to the immediate topic of discussion, i.e., the house and the bicycle, or to the underlying right to cut off questioning." Almeida v. State, 737 So.2d 520, 523 (Fla. 1999).