ON MOTION FOR REHEARING
 

 GROSS, J.
 

 We deny Chance Joe’s motion for rehearing, but withdraw our previously issued opinion of May 25, 2011, and substitute the following in its place.
 

 Joe appeals his conviction for robbery with a deadly weapon. He argues that the trial court erred in denying his motion to suppress a recorded statement. We affirm the conviction and reject Joe’s argument that he invoked his right to remain silent after hearing
 
 Miranda
 
 warnings.
 

 I.
 
 FACTS
 

 At the beginning of his post-arrest interrogation, the following exchange between a detective and Joe occurred:
 

 DETECTIVE: Anybody read you your rights yet?
 

 JOE: Huh?
 

 DETECTIVE: You have been read your rights? You want me to read them to you again? You understand them? All right. So I’ll just review them to you real quick. You understand you have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to an attorney, have one present with you during questioning. If you cannot afford to hire an attorney, one will be appointed to represent you before questioning if you wish one. Do you understand your rights? All right. With your rights in mind, are you willing to answer any questions right now and talk with me at all about what happened on the, I don’t have the exact dates, but the incident that the, well, the night you got shot?
 

 JOE: Yeah. I ain’t got nothing to say. I didn’t, I don’t even know what happened. I got shot I mean, you know what I’m saying.
 

 DETECTIVE: Well, I know you got shot. I mean no, we’ve been looking for you since, since you checked yourself out of the hospital. You got to know that; right?
 

 JOE: I’m saying but I checked myself back into the hospital too.
 

 Joe continued to talk to the detective and made incriminating statements. Audio of the interrogation was digitally recorded. The recording was admitted at the suppression hearing and is included in the record on appeal. The detective testified at the hearing that Joe indicated he wanted to continue.
 

 Below, Joe argued that he had unequivocally invoked his Miranda
 
 [1]
 
 right to remain silent when advised of that right by the detective, but the detective ignored the invocation. The state responded that, in context, Joe was stating that he had nothing to say because, beyond getting shot, he did not know what happened. The trial court agreed with the state and denied Joe’s motion.
 

 II.
 
 ANALYSIS
 

 On appeal, Joe contends that the trial court should have suppressed the statement. He characterizes his statement — “I ain’t got nothing to say.” — as an unequivocal expression of his wish to remain silent or, at the least, an equivocal one that the detective needed to clarify before continuing the interrogation. We disagree.
 

 
 *425
 

 A.Standard of Review
 

 The voluntariness of a confession is a mixed question of law and fact.
 
 Donovan v. State,
 
 417 So.2d 674, 676 (Fla.1982),
 
 receded from on other grounds by State v. DiGuilio,
 
 491 So.2d 1129 (Fla.1986);
 
 Whitfield, v. State,
 
 479 So.2d 208, 213 (Fla. 4th DCA 1985). “[M]ixed questions of law and fact that ultimately determine constitutional rights should be reviewed by appellate courts using a two-step approach, deferring to the trial court on questions of historical fact but conducting a de novo review of the constitutional issue.”
 
 Con-nor v. State,
 
 803 So.2d 598, 605 (Fla.2001) (citations omitted). “However, this deference to the trial court’s findings of fact does not fully apply when the findings are based on evidence other than live testimony,” since such evidence is as available to the appellate court as it was to the trial court.
 
 Parker v. State,
 
 873 So.2d 270, 279 (Fla.2004) (citation omitted).
 

 B.Applicable Law
 

 “Both the United States and Florida Constitutions provide that persons shall not be ‘compelled’ to be witnesses against themselves in any criminal matter.”
 
 Ross v. State,
 
 45 So.3d 403, 412 (Fla.2010) (citing U.S. Const. amend. V; art. I, § 9, Fla. Const.). This right against self-inerimination is given effect through a person’s right to remain silent.
 
 Miranda v. Arizona,
 
 384 U.S. 436, 467-69, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 Miranda
 
 holds that “[t]he defendant may waive effectuation of [the right], provided the waiver is made voluntarily, knowingly and intelligently.”
 
 Id.
 
 at 444, 86 S.Ct. 1602. Waiver may be express or implied.
 
 See N. Carolina v. Butler,
 
 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). If at the beginning of an interrogation the defendant attempts to invoke his rights rather than waive them, and the invocation is equivocal or ambiguous, the police must seek clarification before proceeding further; equivocation and ambiguity may cast doubt on the voluntary, knowing, and intelligent nature of a purported waiver and subsequent confession.
 
 See Alvarez v. State,
 
 15 So.3d 738, 745 (Fla. 4th DCA 2009),
 
 rev. denied,
 
 26 So.3d 581 (Fla.2010). This rule stands in contrast to the rule for post-waiver invocations of
 
 Miranda
 
 rights: after a prior voluntary, knowing, and intelligent waiver, the police do not have to stop an interrogation and clarify equivocal or ambiguous invocations of Fifth Amendment rights.
 
 See State v. Owen (Owen
 
 II), 696 So.2d 715 (Fla.1997).
 

 C.Cuervo v. State and Almeida v. State
 

 Urging error, Joe relies on
 
 Cuervo v. State,
 
 967 So.2d 155 (Fla.2007). While that initial waiver case is similar to the instant one in many respects, it is nonetheless distinguishable. In
 
 Cuervo,
 
 the Spanish-speaking defendant was interviewed by an English-speaking investigator through a Spanish-speaking officer acting as an interpreter.
 
 Id.
 
 at 157. The interpreter read the defendant “all of his
 
 [Miranda
 
 ] rights” and then asked the defendant whether he understood those rights.
 
 Id.
 
 The defendant responded in the affirmative.
 
 Id.
 
 But, when asked if he wanted to talk about the matter for which he was arrested, the • defendant replied, in Spanish, “No quiero declarar nada.”
 
 Id.
 
 That statement translates to “I don’t want to declare anything.”
 
 Id.
 
 The interpreter confirmed this with the defendant and reported the response to the investigator: “He does not wish to talk with us.”
 
 Id.
 
 The investigator nonetheless continued with the interrogation.
 
 Id.
 
 at 157-58.
 

 The Florida Supreme Court held that, in its context, the statement “constituted a clear invocation of the right to remain
 
 *426
 
 silent,” and the interpreter’s translation for the investigator indicated he and the investigator understood it as such.
 
 Id.
 
 at 163. The court looked to other decisions and concluded that “similar responses [have] constituted an exercise of the right under
 
 Miranda
 
 to terminate the interrogation.”
 
 Id.
 
 (citing
 
 Michigan v. Mosley,
 
 423 U.S. 96, 104, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975);
 
 Moore v. State,
 
 798 So.2d 50, 52 (Fla. 1st DCA 2001);
 
 Dooley v. State,
 
 743 So.2d 65, 68 (Fla. 4th DCA 1999);
 
 Segarra v. State,
 
 596 So.2d 740, 741 n. 1 (Fla. 2d DCA 1992)). In distinguishing another case,
 
 State v. Owen (Owen II),
 
 696 So.2d 715 (Fla.1997), the
 
 Cuervo
 
 court wrote that “[t]he statements in
 
 Owen
 
 were made during the course of an interrogation and not given in response to a specific question regarding whether the defendant wanted to give a statement or talk after he was read his
 
 Miranda
 
 rights.”
 
 Id.
 

 Like the statement in
 
 Cuervo,
 
 the statement on which Joe relies was made at the beginning of the interrogation and in response to a specific question on whether Joe wanted to give a statement after being apprised of his
 
 Miranda
 
 rights. But the similarities end there. Joe said, ‘Neah. I ain’t got nothing to say. I didn’t, I don’t even know what happened. I got shot I mean, you know what I’m saying.” Contrary to Joe’s characterization that this was an unequivocal or at least equivocal invocation of his right to silence — a characterization that focuses on only one sentence — the whole statement amounts to an unequivocal expression of Joe’s willingness to talk. Joe immediately answered “Yeah” — he was willing to answer questions. And, by the second sentence, Joe was not saying he did not want to talk but that, because he was shot, he did not know what happened and, thus, had nothing to say. Our review of the audio recording confirms this view; in the recording, Joe’s tone was casual and engaging.
 

 Almeida v. State,
 
 737 So.2d 520 (Fla.1999), is likewise unavailing. There, in the context of apprising a defendant of his
 
 Miranda
 
 rights, the interrogating officer asked the defendant, “Do you wish to speak to me now without an attorney present?”
 
 Id.
 
 at 522. The defendant “paused for many seconds (about 5 seconds on the tape), and made a pensive, probing response: “Well ... [pause] ... what ... [another pause] ... good is an attorney going to do?’ ”
 
 Id.
 
 at 524. The Supreme Court found this to be “a
 
 genuine
 
 question” to which the defendant “was seeking a frank answer.”
 
 Id.
 
 (emphasis in original). Ignoring the question, the officer continued interrogating the defendant, eliciting incriminating statements.
 
 See id.
 

 The court distinguished this scenario from an equivocal statement after a defendant’s clear waiver of rights; per
 
 Owen II,
 
 such a statement, occurring during an interrogation, would not require police to stop and clarify.
 
 Id.
 
 The
 
 Almeida
 
 defendant had, however, asked “an
 
 un
 
 equivocal question that was prefatory to — and possibly determinative of — the invoking of a right and which cast doubt on the knowing and intelligent nature of the prior waiver.”
 
 Id.
 
 (emphasis in original). The court held “that if, at any point during custodial interrogation, a suspect asks a clear question concerning his or her rights, the officer must stop the interview and make a good-faith effort to give a simple and straightforward answer.”
 
 Id.
 
 at 525. Connecting the “twin rulings” of
 
 Owen
 
 and
 
 Almeida,
 
 the court wrote “that police must honor a clear statement invoking a suspect’s rights,” and “police similarly must answer a clear question concerning a suspect’s
 
 *427
 
 rights.”
 
 Id.
 
 at 525-26. Here, Joe asked no clear question concerning a right; thus, his statement cast no doubt on his waiver within the meaning of
 
 Almeida.
 

 In sum, Joe’s statement in context establishes a waiver, and not an invocation, of his right to silence. The trial court did not err in denying his motion to suppress the ensuing, recorded statement.
 

 Affirmed.
 

 HAZOURI and CIKLIN, JJ., concur.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).